**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| **WILLIAM DOYLE,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| **v.** | ) |
| | ) |
| **WASHINGTON METROPOLITAN AREA** | ) |
| **TRANSIT AUTHORITY,** | ) **Case No.:** _____ |
| **300 7th St. SW** | ) |
| **Washington, D.C. 20024,** | ) **JURY TRIAL REQUESTED** |
| | ) |
| *Serve registered agent***:** | ) |
| | ) |
| **Patricia Y. Lee, Esq.** | ) |
| **Chief Legal Officer & General Counsel,** | ) |
| **300 7th St. SW** | ) |
| **Washington, D.C. 20024,** | ) |
| | ) |
| *and* | ) |
| | ) |
| **TERRENCE GOINES,** | ) |
| **9001 Walden Rd.** | ) |
| **Silver Spring, MD 20901,** | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

**CIVIL COMPLAINT FOR EQUITABLE AND**
**MONETARY RELIEF AND DEMAND FOR JURY TRIAL**

Plaintiff William Doyle, through his counsel, brings this civil complaint and jury demand

against Defendant Washington Metropolitan Area Transit Authority ("WMATA") and

Defendant Terrence Goines, jointly and severally. Doyle seeks damages and equitable relief

against Defendant WMATA for wrongful termination in violation of District of Columbia

common law and against Defendant Goines for discrimination in violation of Sections 1981 &

1983 of the Civil Rights Acts of 1871.

1

**PARTIES**

1.      Plaintiff is a Caucasian male and is a resident of the Commonwealth of Virginia.

2.      Defendant WMATA is an entity established by a compact between the State of Maryland, the Commonwealth of Virginia, and the District of Columbia, and by consent of Congress. WMATA is headquartered at 300 7th Street SW, Washington, D.C. 20024.

3.      Defendant Terrence Goines is an African American male and is a resident of the State of Maryland.

**JURISDICTION AND VENUE**

4.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it asserts claims that arise under the laws of the United States, specifically Sections 1981 & 1983 of the Civil Rights Acts of 1871.

5.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because Doyle's *Carl* claim under District of Columbia common law is sufficiently related to his claim under federal law.

6.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the Defendant WMATA's headquarters is in this judicial district, the alleged violations took place in this judicial district, and Goines works in this judicial district.

**FACTUAL ALLEGATIONS**

7.      WMATA hired Doyle in or about 2019 as its senior director of software, systems, and deputy chief information officer ("CIO").

8.      Dianna Rosborough, an African American female, became Doyle's supervisor on or about April 8, 2022.

9.      Rosborough commonly referred to older Caucasian members of WMATA

management as "old white leaders" or "OWLs."

10. Rosborough supervised Doyle for a period of about 14 days before Rosborough promoted Torri Martin, an African American male, to be WMATA's chief information officer ("CIO"), at which point Martin became Doyle's supervisor.

11. WMATA promoted Rosborough to acting executive vice president ("EVP") of Internal Business Operations ("IBOP") on or about December 12, 2021.

12. Rosborough hired Martin VP of PPI on or about March 14, 2022 and then appointed/promoted Martin to SVP and CIO on or about April 22, 2022.

13. Under WMATA's Concurrence Policy, WMATA had 13 non-African American leaders within IBOP at the time Rosborough became acting EVP, and Roseborough removed/attempted to remove 12 of them during her tenure in favor of less qualified African American employees.

14. Doyle notified Martin and other WMATA employees on or about April 12, 2022, that WMATA had not been supporting its data transmission operation since on or about January 1, 2022, and that it was a "miracle" no system outages had occurred. In that update, Doyle stated, "Resource Shortages Exist and Have to be Filled: Imminent operational risk (SOA, GOTRS, SSWP) and "Immediate Needs and Risks – Mobile/Fare/GOTRS/SSWP/SmartTrip."

15. Doyle notified Rosborough on or about April 13, 2022, that a contract for the provision of service to rail-worker life-safety systems and a Critical Action Plan ("CAP") for the Washington Metrorail Safety Commission were due to expire on or about July 31, 2022.

16. On or about May 2, 2022, Doyle notified Rosborough and Martin that the support hours remaining on the contract for maintenance of critical life and employee safety applications General Order Track Rights ("GOTRS") and Site-Specific Work Plan ("SSWP") were due to

3

run-out before July. The GOTRS system keeps track of rail maintenance, ensuring that the electrified third rail is depowered and preventing trains from entering areas where rail-workers are conducting maintenance. SSWP creates a work plan for rail maintenance using available assets, then relays the work plan to the GOTRS system.

17.     On or about May 23, 2022 a titled officer of WMATA contacted Doyle and shared, "Oh my God, they [Rosborough and Martin] are going to lie to the board" about progress – or lack thereof – on several systemically-critical Corrective Action Plans in his domain of authority.  As required by WMATA policy and due to his position as the sole-remaining Deputy CIO, Doyle reported to WMATA's Office of the Inspector General that Rosborough and Martin (his next two level-up supervisors) were making material misrepresentations in a report to WMATA's general manager and chief executive officer, as well as to its board of directors, who in turn would be sharing those inaccurate updates with the WMSC, FTA, and NTSB.

18.     Martin non-competitively hired/appointed Terrence Goines, an African American male, to be WMATA's new and first CTO on or about June 3, 2022 — in defiance of WMATA's Concurrence Policy and Process.

19.     Goines supervised Doyle from on or about June 6, 2022, through Doyle's termination on or about February 22, 2023.

20.     Martin's hiring Goines effectively demoted Doyle, as one of Doyle's duties prior to Goines was to serve as WMATA's deputy CIO.

21.     On or about June 3, 2022, Doyle reported to WMATA's OIG that Rosborough requested extensions on CAP deadlines to cover up that she defunded and removed staff from programs meant to make progress on those CAPs. Doyle also reported that maintenance on WMATA's rail system would become unsafe when the contract for GOTRS and SSWP expired

on or about June 30, 2022. Doyle stated that this would impact both ongoing rail operations and rail worker life safety, but also several CAP-related Capital Programs related to WMATA's PowerDesk CAP, and accountable to the WMSC and Congress.

22.    Martin demoted Doyle to director of business systems on or about June 6, 2022.

23.    Doyle provided an update to WMATA's OIG on or about June 17, 2022, including reporting that GOTRS and SSWP were "headed for shut down."

24.    Doyle also reported to WMATA's OIG on or about June 24, 2022, that WMATA had not resolved the issues with GOTRS and SSWP, which would lead to a rail maintenance shutdown if allowed to proceed. Doyle also reported that WMATA was putting rail workers at risk and compromising safe rail maintenance operations.

25.    Doyle made another report to WMATA's OIG on or about July 20, 2022, disclosing in relevant part that the resources assigned to GOTRS and SSWP had begun "rolling off" the contract and that when the "roll off" was completed, WMATA's life and rail worker safety systems would no longer be supported, resulting in the cessation of rail maintenance to protect passengers and rail-workers. Instead, WMATA allowed rail maintenance operations to continue despite the lack of support for rail-worker life-safety systems GOTRS and SSWP, endangering both passengers and rail-workers.

26.    WMATA's director of transit, Albert Fehrens, informed Doyle on or about July 24, 2022, that WMATA's acting chief enterprise architect Vamsi Krishna Datla, a member of Martin's "inner circle," informed Fehrens that Fehrens needed to "act like a senior director" because Doyle was on a performance improvement plan and that Fehrens would soon have Doyle's role. Doyle was not on a performance improvement plan at the time.

27.    Doyle disclosed to WMATA's OIG on or about July 29, 2022, that only a single

developer remained on GOTRS and SSWP, creating risks to rail maintenance and knowledge transfer for transition of that work.

28. Goines provided Doyle with a copy of his 2022 annual performance evaluation on or about August 17, 2022, with Goines rating Doyle as a 2 out of 5. Doyle escalated a complaint alleging retaliation by Martin, Rosborough, Goines, and Sherri Thompson-Dickerson to OIG that same day, August 17, 2022.

29. Doyle met with Goines and Martin on or about August 19, 2022, to discuss Doyle's 2022 annual performance evaluation rating. Martin indicated that he was going to increase Doyle's rating to 3 out of 5 before Doyle contested anything on the evaluation. However, he did not remove or change any of Goines's critical remarks about Doyle in the performance evaluation.

30. Doyle reported to WMATA's OIG on or about August 22, 2022, that "the unresolved and protracted resource shortages specifically on the team that supports rail-worker safety during rail maintenance via the [GOTRS] and [SSWP] – and the Tagging Relay project – has reached critical mass." Doyle asked WMATA to act "immediately" because "[s]afety hangs in the balance."

31. On or about August 29, 2022, Doyle reported to WMATA's OIG that there was no IT support for MetroAlerts, an employee safety communication system used to notify WMATA employees if there was a danger to their safety. Doyle reported that the lack of IT support may make MetroAlerts unusable. On or about December 7, 2022 an active shooter event occurred at the Metro Center station – just 2 blocks from WMATA's then Headquarters, and the MetroAlerts system could not be utilized to alert Metro staff to the inherent dangers to themselves and passengers – due to the loss of support for that system.

32.     Doyle added in his August 29, 2022 report, that Goines delayed action with unnecessary requests in the face of Doyle's warnings about the staffing issues threatening rail worker safety on GOTRS and SSWP.

33.     On or about September 22, 2022, Doyle reported to WMATA's OIG that only 18 hours of support remained on the contract for GOTRS and SSWP, "meaning that the only technical resource is no longer providing any day-to-day support for these applications" because the available hours needed to be reserved as a "hold-back in case there is an emergency."

34.     Doyle reported to WMATA's OIG on or about October 14, 2022, that Rosborough submitted another report containing false and inaccurate information to WMATA's board of directors on October 7, 2022. Doyle reported that GOTRS, SSWP, and other Mobile applications were "essentially unsupported" and "our rail workers are in danger…"

35.     Doyle reported to WMATA's chief risk officer, Elizabeth Sullivan, WMATA's inspector general, Rene Febles, and WMATA's general counsel, Patricia Lee, on or about November 25, 2022, that Goines and Martin were engaged in wrongdoing related to procurement.

36.     WMATA terminated Rosborough's employment on or about November 29, 2022, and it announced a reorganization on or about December 5, 2022, creating a chief digital officer position above Martin and Goines.

37.     WMATA conducted an external, competitive search for the position, and Doyle applied for the role.

38.     Doyle submitted another report to Lee, Febles, and Sullivan on or about December 6, 2022, reporting that Doyle was experiencing retaliation for whistleblowing. Doyle attached a document to this report stating that because of Rosborough, Martin, and Goines,

"GOTRS, SSWP, and other rail-worker safety systems that have gone unaddressed and those systems are now effectively unsupported."

39.    Goines and Martin again presented Doyle with a performance improvement plan on or about December 6, 2022 — the day after General Manager Clark's reorganization and CDO role announcements. A PIP would effectively exclude Doyle from consideration for the CDO role due to WMATA policy pertaining to Concurrence, Hiring, and Appointments. WMATA never formally added the plan to Doyle's personnel file or officially implemented it. The final date for the performance period specific in this PIP was February 22, 2023, the same date as Doyle's termination. This PIP would provide WMATA with the pretext needed in order to terminate Doyle for an allegedly legitimate business reason.

40.    Doyle disclosed to Theresa Impastato, Jayme Johnson, Lee, Sullivan, Febles, and Richard Lisko on or about December 8, 2022, that Doyle had made reports to SAFE regarding safety concerns he had identified and noted "imminent danger related to SSWP, GOTRS, and also WMATA lacking fundamental operational readiness across . . . data centers."

41.    On or about December 8, 2022, Doyle learned that someone in WMATA's OIG office forwarded his reports outside of OIG, giving him reasonable cause to believe Goines, Martin, and others were aware of his reports to WMATA's OIG.

42.    Doyle reported to Johnson and Impastato on December 14, 2022, that Doyle had been "raising alarms about GOTRS and SSWP support for months."

43.    Goines presented Doyle with the performance improvement plan again on or about January 23, 2023, at which time the terms of the plan remained the same as they did in December. WMATA never formally added the plan to Doyle's personnel file or officially implemented it.

8

44.    WMATA's chief medical officer, Dr. Amy Espy-Smith, granted Doyle an accommodation to work from home beginning on or about January 25, 2023, and advised Doyle that he was not to share information about the accommodation with his supervisory officials — if they asked, they were to be directed to contact her as CMO due to HIPAA regulations.

45.    Doyle filed a complaint with OSHA on or about January 28, 2023, alleging WMATA retaliated against him in violation of the National Transit Systems Security Act.

46.    On or about February 1, 2023, Doyle disclosed to Lee, Febles, Sullivan, Impastato, and Johnson that "IBOP/IT/PPI leadership deliberately neglected safety systems support and suppressed support for GOTRS, SSWP, Tagging Relay," as well as other applications.

47.    Goines presented Doyle with the performance improvement plan again on February 7, 2023. WMATA never formally added the plan to Doyle's personnel file or implemented it.

48.    WMATA's OIG interviewed Doyle on-site on or about February 17, 2023, regarding Doyle's August 17, 2022 report of retaliation.

49.    Doyle discovered on or about the morning of February 22, 2023, that somebody was obscuring, hiding, and/or deleting confidential investigative files and documents Doyle had assemble for submission to the OIG regarding the life safety systems, procurement, and other reports. Doyle reported this to OIG investigators and Rod Allsopp, Deputy Chief of Data Center Operations.

50.    Shortly afterwards, WMATA issued Doyle a notice on or about February 22, 2023, stating that its OIG completed its investigation into Doyle's August 17, 2022 complaint of retaliation and purportedly found that his allegations did not amount to whistleblower retaliation.

51.     Following that notice, the US Department of Labor and OSHA notified WMATA that an investigation into Doyle's claims had been accepted and opened. OSHA Investigator Daniel Loomie informed Doyle that retaliation by termination was not uncommon after receiving the OSHA/DOL notice.

52.     Martin and Goines assembled WMATA's IT leadership team on or about February 22, 2023, and informed them that WMATA terminated Doyle's employment.

53.     Doyle had completed two rounds of interviews for WMATA's Chief Digital Officer position and was expected to begin in-person interviews shortly. Martin and Goines's decision to remove Doyle eliminated him from consideration for that position.

54.     Prior to his termination, Doyle discovered on or about February 22, 2023, that somebody was obscuring, hiding, or deleting files and documents Doyle had assembled for submission to the OIG.

55.     WMATA and Goines terminated Doyle's employment on or about February 22, 2023.

56.     Doyle has sustained substantial monetary and mental anguish as the result of Defendants' illegal conduct, and he will continue to sustain damages into the future.

**COUNT I**
**Section 1983 of the Civil Rights Act of 1871**
**42 U.S.C. § 1981 & 1983 *et seq.***
**Discrimination**
**(Against Defendant Goines)**

57.      Plaintiff hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

58.     At all times relevant to this complaint, Plaintiff was a "person" within the meaning of Section 1981.

59.    At all times relevant to this complaint, Defendant Goines was a "person" within the meaning of Section 1983.

60.    Defendant Goines discriminated against Plaintiff based on his race, depriving Plaintiff of his Section 1981 rights by treating Plaintiff more harshly than he did non-Caucasian employees, sabotaging Plaintiff's candidacy for the chief digital officer position at WMATA, and by favoring non-Caucasian employees over Plaintiff.

61.    Defendant Goines further unlawfully discriminated against Plaintiff when he terminated Plaintiff's employment.

62.    The reasons for terminating Plaintiff's employment are false and are pretext for unlawful discrimination.

63.    For Defendant Goines' unlawful discrimination against Plaintiff, pursuant to Section 1981, Plaintiff is entitled to general and special damages, economic damages including front and back pay, punitive damages, reinstatement, promotion, compensatory damages, punitive damages, reasonable attorney's fees to be paid by Defendant Goines, as well as his costs and any other legal and/or equitable relief that this Court deems appropriate.

**COUNT II**
**Wrongful Termination**
**D.C. Common Law**
***Carl v. Children's Hosp.*, 702 A.2d 159 (D.C. 1997)**
**(Against Defendant WMATA)**

65.    Plaintiff incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

66.    *Carl* provides an exception to the at-will employment doctrine if the employer has violated a public policy "firmly anchored either in the Constitution or in a statute or regulation which clearly reflects the particular policy being relied upon." *Coleman v. D.C.*, 828 F. Supp. 2d

11

87, 96 (D.D.C. 2011).

67.     D.C. Code § 32-808(a) states that all employers "shall furnish a place of employment which shall be reasonably safe for employees, shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes which are reasonably safe and adequate to render such employment and place of employment reasonably safe."

68.     D.C. Municipal Reg. § 7-2009.1 states that "[e]mployees have a right, to the maximum extent possible, to a safe and healthful working environment."

69.     D.C. Municipal Reg. § 7-2009.2 states that "[a]ny employee in exercising this right may without fear of reprisal, report an unsafe or unhealthful working condition or practice which may lead to a subsequent investigation."

70.     Defendant WMATA violated the District of Columbia's public policy, in D.C. Code § 32-808(a) and D.C. Municipal Reg. §§ 7-2009.1, 7-2009.2 when it allowed staffing on GOTRS and SSWP to reach a critically low level, putting WMATA workers' safety at risk.

71.     Defendant WMATA wrongfully discharged Plaintiff because of his actions taken in accordance with the public policy outlined in D.C. Code § 32-808(a) and D.C. Municipal Reg. §§ 7-2009.1, 7-2009.2

72.     Accordingly, Plaintiff is entitled to such legal or equitable relief as will effectuate the purposes of his *Carl* claim, including, but not limited to, reasonable attorneys' fees, compensatory damages, punitive damages, damages for humiliation and embarrassment, front and back pay, interest on all damages, equitable relief, consequential damages, any other relief that furthers the purpose of a *Carl* claim, and any other relief that this Court deems just and equitable.

12

**PRAYER FOR RELIEF**

Based on the foregoing, Plaintiff respectfully requests that she be awarded the following relief against Defendants WMATA and Goines:

a)  Reinstatement or, in lieu thereof, full front pay and benefits;

b)  Economic damages for lost compensation and benefits and damages to Plaintiff's career, reputation, and earning capacity in an amount to be determined;

c)  Compensatory damages, including but not limited to pain and suffering, emotional distress and reputational damage;

d)  Injunctive and declaratory relief;

e)  Punitive damages;

f)  Reasonable costs and experts' and attorneys' fees;

g)  Liquidated damages; and

h)  Any other such relief that a court may deem just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues proper to be so tried.

Respectfully submitted,

*/s/ R. Scott Oswald*
R. Scott Oswald, Esq. (D.C. Bar No. 458859)
Austin Ray Szabo, (D.C. Bar No. 90009495)
The Employment Law Group, P.C.
1717 K St. NW, Ste. 1110
Washington, D.C. 20006
(202) 609-8378
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
aszabo@employmentlawgroup.com
*Counsel for Plaintiff*

13